## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

PHYLLIS RICHARDS,                )
                                 )
      Plaintiff,              )
                                 )
v.                               )          CV 00-JEO-3613-NE
                                 )
OMNI INSURANCE COMPANY,          )
                                 )
      Defendant.              )

**ENTERED**

MAY **29** 2002

### MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment (doc. 6)[1] filed by defendant Omni Insurance Company ("the defendant" or "Omni").  The defendant filed a brief and evidentiary submission in support of the motion (doc. 8), to which the plaintiff, Phyllis Richards ("the plaintiff" or "Richards"), submitted a brief in response (doc. 10).  The court has reviewed the motion, the briefs, and the evidentiary submission and finds that the motion is due to be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

Richards commenced this action by filing a complaint in the Circuit Court for Morgan County, Alabama, on November 14, 2000, alleging claims against the defendant for breach of contract, bad faith, and fraud.  (Doc. 1, Complaint).  The plaintiff's claims arise out of the defendant's actions in denying insurance coverage to repair or replace the plaintiff's car engine following an accident.  The defendant filed a notice of removal with this court on December 15, 2000, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441, *et seq*.  (Doc. 1).

---

[1]References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the court's record of the case.

## II. SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Initially, the moving party bears the burden of proof "to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

The moving party can satisfy his burden by presenting evidence that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; FED. R. CIV. P. 56(a) and (b).

Should the moving party meet his burden of proof, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. Material facts are those that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Genuine material facts are those material facts that could cause a reasonable jury to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248. The nonmoving party need not present evidence in a form necessary for admission at trial, however, the movant may not merely rest on the pleadings. *Celotex,* 477 U.S. at 324.

The court should consider the pleadings, depositions, and affidavits in the case before reaching its decision, and all reasonable inferences should be made in favor of the nonmovant.

2

*Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir. 1992).  The judge's role is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson,* 477 U.S. at 249.

## III. FACTUAL BACKGROUND[2]

Richards purchased insurance coverage from the defendant on a 2000 Toyota Camry. (Richards Depo. at 14).  About a week after it was purchased, her son, Aaron Clarke, borrowed the automobile to visit a friend.  (Clarke Depo. at 18-29; Richards Depo. at 18).  He kept it overnight and was returning it to the plaintiff early on July 8, 2000.  (Clarke Depo. at 27; Richards Depo. at 27).  To avoid being struck by another vehicle, he veered off the road into a ditch.  (Clarke Depo. at 32-35; Richards Depo. at 21-22, 25).  Clarke and his passenger were not hurt.  (Clarke Depo. at 35-36).  Clarke examined the car and determined that it was not significantly damaged.  (Clarke Depo. at 37).  He then moved the car back on to the road and drove it approximately a half mile to a parking lot, the second one he passed.  (Clarke Depo. at 38, 40-42; Richards Depo. at 22-23).  He called the plaintiff and the police.  (Clarke Depo. at 43; Richards Depo. at 26).  Clarke took the police to the scene of the accident.  (Clarke Depo. at 43, 47).  The car was towed by a wrecker service to Greer Frame and Body Shop.  (Clarke Depo. at 51; Richards Depo. at 27-28).  When it was transported, the tow truck driver noticed a "big" puddle under the car.  (Branham Depo. at 16-17).  The driver did not know whether the puddle was antifreeze or oil.  (*Id.*, 16-17, 26-28).  He estimated that it was three to four quarts of liquid. (*Id.*, 28, 30).

---

[2] The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia,* 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

An adjuster examined the car on July 19, 2000.  (Richards Depo. at 30; Mitchell Aff. at 1).  He estimated the repairs to be $9,856.72.  (Mitchell Aff. at 1).  The initial assessment by the adjuster revealed damage "in the front, the undercarriage and [the] rear of the vehicle."  (*Id.*).  He noted that the cooling and air conditioning system were damaged, necessitating the "replac[ement of] some of these components, one of these components being the radiator because of the separation of the cooling fins from the cooling fluid reservoir."  (*Id.*).  No further damages to the engine block were evident.  (*Id.*).  The adjuster left a copy of the appraisal with the repair shop and sent a draft in the amount of the estimate, less the deductible, to the plaintiff.  (Mitchell Aff. at 2).  The settlement amount was also communicated to the plaintiff by telephone.  (*Id.*).

On August 7, 2000, the adjuster received a call from the repair shop indicating that additional damage to the car had been discovered.  The appraiser estimated the additional damage to be $2,219.96.  (Mitchell Aff. at 2).  He forwarded a second draft in that amount to the repair shop as directed by the plaintiff.  (*Id.*).

After the repairs were made on the car by Greer's Frame and Body Repair Shop, the shop owner attempted to start the car.  It would not start.  (Clarke Depo. at 54; Richards Depo. at 31).  He called the adjuster who told him to take it to the Toyota dealership.  (Mitchell Aff. at 2).  The Toyota body shop manager determined that the engine was "blown."  (*Id.*; Richards Depo. at 31).  The adjuster was informed by the technician that examined the engine "that the engine had been run excessively hot causing the internal components of the engine to fail."  (*Id.*).  He was further told "that the engine had been so hot that the oil was burned and crusted onto the walls of the internal engine block.  [The technician] stated that excessive overheating of the engine could only have caused this."  (*Id.*).

4

When the adjuster spoke with Clarke, he asked Clarke how far he had driven the car after the accident. Clarke told him that "he had tried rocking the vehicle back and forth to get it out of the ditch but was unsuccessful in getting it unstuck." (Mitchell Aff. at 3). The adjuster concluded from this conversation that the vehicle had been left at the scene of the accident. (*Id.*). After the adjuster was unable to locate the accident scene, he ultimately contacted the plaintiff who informed him that the car had been moved a short distance. (*Id.*). The adjuster then contacted the wrecker driver to determine the pick-up location. (*Id.*). Premised on his investigation of the matter and his personal observation of the vehicle, the adjuster concluded that the damage to the engine was not caused by the accident. (*Id.*). He believed the engine damage was caused by driving the car while the engine was overheated due to the loss of cooling fluid. (*Id.*).

The adjuster talked with the plaintiff on August 16, 2000, and told her that the defendant was not responsible for the engine damage. (Richards Depo. at 32; Mitchell Aff. at 3).

Either in the end of 2000 or early 2001, the plaintiff called the tow truck driver and asked him where he picked up the car in the parking lot. (Branham Depo. at 20-21). They discussed the situation with the insurance company. (*Id.*). The plaintiff "wanted [him] to just tell the insurance company [that he] got it out of the ditch." (*Id.*). He told her that he was not going to do that because he got the car from a parking lot. (*Id.*).

## IV. DISCUSSION

### A. Breach of Contract

This diversity case arises from Omni's alleged breach of the insurance contract by refusing to pay for the repairs to the engine. "To prevail on a claim for breach of contract, the

5

plaintiff must establish: '(1) proof of a valid and enforceable contract; (2) the terms and conditions of the contract, including the contract price; (3) a breach of the contract; and (4) damages.' *Baxter v. Jones,* 529 So. 2d 217, 222 (Ala. 1988)." *Whaley v. Sony Magnetic Products, Inc. of America*, 894 F. Supp. 1517, 1526 (M.D. Ala. 1995). *See also State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293 (Ala. 1999) (the plaintiff must prove (1) the existence of a valid contract, (2) the plaintiff's own performance under the contract, (3) the defendant's nonperformance, and (4) damages). As noted by the defendant, a "'[b]reach' consists of the failure without legal excuse to perform any promise forming the whole or part of the contract.' *McGinney v. Jackson,* 575 So. 2d 1070, 1071-72 (Ala. 1991) (citing 17 Am. Jur. 2d *Contracts* § 441 at 897 (1964))." *Dickinson v. Cosmos Broadcasting Co., Inc.*, 782 So. 2d 260, 265 (Ala. 2000).

The relevant portion of the plaintiff's insurance policy provides that the defendant will pay for any "loss" to the insured car caused by collision or "[n]ot caused by collision" less any deductibles. (Doc. 7, Ex. 1, Part D (p. 3)). A "loss" is defined as any "direct and accidental loss of or damage to your insured car, including its equipment." (*Id.*).

The defendant asserts that it is not required to pay for any damage to the engine because it "was not harmed by the collision with the ditch." (Doc. 8, p. 5). It further asserts that if Clarke "had not moved and drove the vehicle after the collision, the engine would have been unharmed and the present lawsuit would not have arisen." (*Id.* at 5-6) (underlining in original). According to the defendant, this "indirect and consequential damage clearly does not qualify as a 'direct and accident[al]' loss without doing injury to the plain and ordinary meaning of those terms." (*Id.*).

The plaintiff counters that "it is reasonable to presume that the damage sustained when

moving a vehicle after a wreck would be a direct and accidental loss when the cause for the moving was necessitated by the collision itself." (Doc. 10, Brief at 1). In support of this argument the plaintiff cites to ALABAMA CODE § 32-5A-136 (1975), which requires that a disabled vehicle be moved so as to not obstruct the highway. (Doc. 10, Brief at 1). The plaintiff further asserts that Clarke's decision to move the "vehicle a short distance, in this case one-half mile, to avoid further damage to the vehicle from subsequent collisions, and to comply with the requirements of Alabama law" is therefore a direct and proximate consequence of the original accident. (*Id.*). She also argues that the evidence is disputed as to whether the moving of the vehicle actually caused the engine damage. (*Id.*). In support of this argument she cites to the fact that the car was driven only one-half mile; the fact that Branham testified that he estimated that there was three to four quarts of liquid on the ground under the car; and, the absence of any testimony that a vehicle with that amount of oil or antifreeze would have sustained the damages found as a consequence of driving the one-half mile. (*Id.*).

The defendant is correct that "courts may not rewrite the terms of a policy or interpret unambiguous policy language so as to provide coverage that was not intended by the parties. Canal [Ins. Co. v. Old Republic Ins. Co.], 718 So. 2d [8,] 12 [(Ala. 1998)]. Nor can the trial court create ambiguity by strained and twisted reasoning. City of Rainsville [v. State Farm Mutual Auto Ins. Co.], 716 So. 2d [710,] 712 [(ALA. CIV. APP. 1998)]." (Doc. 8 at 6). However, it is also well-settled "that exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, *Georgia Cas. & Sur. Co. v. University Underwriters Ins.*, 534 F.2d 1108 (5th Cir. 1976), and that such clauses must be construed most strongly against the company that drew the policy and issued it. *American Liberty Ins. Co. v.*

*Soules*, 288 Ala. 163, 258 So. 2d 872 (1972)." *Westchester Fire Ins. Co. v. Barnett Millworks, Inc.*, 364 So. 2d 1137, 1140 (Ala. 1978). *See also Blackburn v. Fidelity and Deposit Co.*, 667 So. 2d 661, 669 (Ala. 1995) ("ambiguities in the language of an insurance policy are construed in favor of the insured, rather than the insurer") (citing *Scottsdale Ins. Co. v. Town of Orange Beach*, 618 So. 2d 1323 (Ala. 1993); *St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hosp.*, 584 So. 2d 1316 (Ala. 1991); *Sullivan v. State Farm Mut. Auto. Ins. Co.*, 513 So. 2d 992 (Ala. 1987)). While an insurance provider is entitled to write narrow policy limits of liability, "it must use precise language." *Blackburn*, 667 So. 2d at 669 (citing *Garrett v. Alfa Mut. Ins. Co.*, 584 So. 2d 1327 (Ala. 1991)). Exclusions limiting policy liability "are construed narrowly, so as to provide the maximum coverage for the insured." *Blackburn*, 667 So. 2d at 669 (citing *Alliance Ins. Co. v. Reynolds*, 494 So. 2d 609 (Ala. 1986); *Employers Ins. Co. of Alabama, Inc. v. Jeff Gin Co.*, 378 So. 2d 693 (Ala. 1979)).

The issue to be addressed is whether the terms "direct and accidental loss" in the insurance policy exclude the damage done to the plaintiff's car as a matter of law. Neither party offers any legal authority dispositive of the issue, and the court has found no such authority. The court, however, does not agree with the defendant's assertion that the damage to the engine "clearly does not qualify as a 'direct and accident' (sic) loss without doing violence to the plain and ordinary meaning of those terms." (Doc. 8 at 6). Over sixty-five years ago, the United States Supreme Court stated that

> the word "direct" implies that the activity or condition invoked or blamed shall operate proximately--not mediately, remotely, or collaterally--to produce the effect. It connotes the absence of an efficient intervening agency or condition. And the extent of the effect bears no logical relation to its character. The distinction between a direct and an indirect effect turns, not upon the magnitude of either the cause or the effect, but entirely upon the manner in which the effect has

8

been brought about.

*Carter v. Carter Coal Co.*, 298 U.S. 238, 307-308, 56 S. Ct. 855, 871, 80 L. Ed. 1160 (1936). It

is clear that Clarke's actions in operating the car, whether it was the rocking of the car back and

forth to get it out of the ditch or driving the car approximately one-half mile down the road, was

the cause that produced the engine damage. It is also equally clear that without the running off

the road and the collision in the ditch the damage to the engine would not have occurred. Under

these circumstances, the court cannot conclude at this juncture as a matter of law that the damage

to the engine is not covered.

The defendant next asserts that it is entitled to summary judgment under a theory of

accord and satisfaction. (Doc. 8 at 6). This argument is premised on the fact that it issued two

checks as payment for the plaintiff's collision claim.

> Accord and satisfaction occurs when parties agree to substitute some performance
> different from that originally contemplated in the terms of the contract, and is thus
> a means through which parties discharge their duties under a contract. *See* 6
> Arthur Linden Corbin, *Corbin on Contracts* § 1276 at 115 (1962). Under
> Alabama law, the elements required to achieve an accord and satisfaction are
> "(1) proper subject matter, (2) competent parties, (3) assent or meeting of the
> minds, and (4) consideration." *Austin v. Cox,* 492 So. 2d 1021, 1022 (Ala. 1986);
> *see also Ray v. Alabama Central Credit Union,* 472 So. 2d 1012, 1014 (Ala.
> 1985).

*Shufford v. Integon Indem. Corp.*, 73 F. Supp. 2d 1293, 1297 (M.D. Ala. 1999). The plaintiff

counters that accord and satisfaction is not applicable because the defendant issued a second

check for supplemental damages. (Doc. 10, Brief at 2).

Upon consideration, the court finds that the third element has not been satisfied in this

matter. The defendant issued the first check incorrectly perceiving that it would satisfy the

damage claim. It was not correct because more damage was discovered. Accordingly, a second

9

check was issued to the repair shop to cover the damages.  It was after that juncture that both parties hereto determined that the car still was not operable due to the engine problem.  The parties were operating under misconceptions that precluded a meeting of the minds for application of the doctrine of accord and satisfaction.  Additionally, the court notes that whether there is "a 'meeting of the minds' is usually an issue of fact rather than a determination of law, and therefore typically left to a jury." *Shufford*, 73 F. Supp. 2d at 1298.

### B. Bad Faith

The plaintiff claims that Omni's denial of coverage constituted bad faith because it had no lawful basis upon which to refuse payment and it did not determine whether there was a lawful basis not to pay.  (Complaint at ¶¶ 5-6).

The defendant argues that summary judgment is proper on the bad faith claim because the plaintiff's claim is premised on a mere fact that it denied coverage.  (Doc. 8 at 9-10).  It further asserts that it had a lawful basis for refusing to pay, an essential element of a claim for bad faith. (*Id.* at 10).

The Supreme Court of Alabama has stated the elements of the tort of bad faith as follows:

(a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

10

*Blackburn v. Fidelity and Deposit Co. of Md.*, 667 So. 2d 661, 667 (Ala. 1995) (quoting *National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)); (*Harrington v. Guaranty National Insurance Co.*, 628 So. 2d 323, 325 (Ala. 1993) (quoting *Bowen*, 417 So. 2d at 183). "In short, the plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *Bowen*, 417 So. 2d at 183. The tort of bad faith has been defined as follows:

> Every contract contains an implied in law covenant of good faith and fair dealing; this covenant provides that neither party will interfere with the rights of the other to receive the benefits of the agreement. [Citations omitted.] Breach of the covenant provides the injured party with a tort action for "bad faith" notwithstanding that the acts complained of may also constitute a breach of contract. [Citations omitted.]

*Blackburn*, 667 So. 2d at 667 (quoting *Chavers v. National Sec. Fire & Cas. Co.*, 405 So. 2d 1, 4 (Ala. 1981) (quoting *Childs v. Mississippi Valley Title Ins. Co.*, 359 So. 2d 1146 (Ala. 1978)). In other words, "a bad faith claim will lie for a failure to provide the benefits contracted for in an insurance policy." *Blackburn*, 667 So. 2d at 667.

Nothing in the record demonstrates that the conduct of the defendant herein, particularly its investigation into the damage to the engine, would support a finding of bad faith. Mitchell's affidavit demonstrates that he investigated the engine failure and concluded that it was a consequence of the car being driven after it overheated and not as a direct result of the collision. (Doc. 7, Ex. 4 at 3). He personally examined the engine and saw no visible damage. He talked with the insured, the driver, the tow truck driver, and the other individuals who examined the engine. Premised on this investigation and the defendant's actions, at a minimum, it had a "reasonably legitimate or arguable reason" for its action in failing to pay the claim on the damage

11

to the engine. *Blackburn*, 667 So. 2d at 667. Accordingly, summary judgment is appropriate on this claim.[3]

### C. Fraud

The Alabama Code defines fraud as follows:

§ 6-5-101. Fraud; misrepresentation of material fact

Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.

ALA. CODE § 6-5-101 (2000).

In order for a plaintiff to substantiate a claim for fraudulent misrepresentation, regardless of whether the misrepresentation was willful, reckless, or mistaken, he must prove four elements: "(1) a false representation, (2) that the false representation concerned a material existing fact, (3) that the plaintiff relied on the false representation, and (4) that the plaintiff was damaged as a proximate result of the reliance." *George v. Associated Doctors Health & Life Ins. Co.*, 675 So. 2d 860, 862 (Ala. 1996) (citing *Jarrard v. Nationwide Mutual Ins. Co.*, 495 So. 2d 584 (Ala. 1986); *International Resorts, Inc. v. Lambert*, 350 So. 2d 391 (Ala. 1977)).

The plaintiff's claim for fraud is based on the fact that when she "took out said policy of insurance, defendant represented to plaintiff that it would insure and pay pursuant to said policy of insurance damage to her car." (Complaint at Count Three ¶ 3). She further asserts that the representation was false and the defendant knew it was false, recklessly misrepresented the facts or mistakenly misrepresented the facts with the intent that the plaintiff rely upon them. (*Id.* at ¶ 4).

---

[3] The court also notes that the plaintiff did not respond to the motion for summary judgment to the extent it relates to the bad faith claim.

12

It is evident that the plaintiff and the defendant disagree over the coverage of the pertinent policy. There is no evidence of an affirmative misrepresentation at or about the time the policy was issued that would satisfy the elements enumerated above for a claim of fraud. Absent such a false statement, "there can be no liability for fraud. . . . *Keller v. Security Federal Sav. & Loan Association*, 555 So. 2d 151, 155 (Ala. 1989) (citing *Pugh v. Kaiser Aluminum & Chemical Sales, Inc.*, 369 So. 2d 796 (Ala. 1979) and *International Resorts, Inc. v. Lambert*, 350 So. 2d 391 (Ala. 1977)." *Prestwood v. City of Andalusia*, 709 So. 2d 1173, 1175 (Ala. 1997). The motion for summary judgment is due to be granted on the plaintiff's fraud claim.[4]

## V. CONCLUSION

Premised on the foregoing, the court finds that the defendant's motion for summary judgment is due to be denied on the breach of contract claim and granted on the bad faith and fraud claims. An order consistent with the court's finding will be entered contemporaneously herewith.

**DONE**, this the 24th day of May, 2002.

**JOHN E. OTT**
United States Magistrate Judge

---

[4] The court again notes that the plaintiff has offered no argument in response to the defendant's motion for summary judgment on this claim.

13